UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATASHA COPELAND,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MRS BPO, LLC,<br><br>　　　　Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Natasha Copeland ("Natasha"), is a natural person who resided in Fairburn, Georgia, at all times relevant to this action.

2. Defendant, MRS BPO, LLC ("MRS"), is a New Jersey limited liability company that maintained its principal place of business in Cherry Hill, New Jersey, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act

-1-

("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. Before MRS began contacting Natasha, it and Natasha had no prior business relationship and Natasha had never provided express consent to MRS to be contacted on her cellular telephone.

6. MRS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of MRS's revenue is debt collection.

8. MRS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, MRS contacted Natasha to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Natasha is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, MRS began calling Natasha on her cellular phone ending in -9354 for the purpose of speaking with someone other than Natasha.

13. Shortly after the calls began, Natasha advised MRS she was not the individual with whom MRS was looking to speak.

14. In doing so, Natasha communicated her desire that MRS cease calling her.

15. Despite this communication, MRS continued to call Natasha on her cellular phone for the purpose of speaking with someone other than Natasha.

16. Natasha believes she spoke with MRS multiple times and advised MRS she was not the individual with whom MRS was looking to speak.

17. Regardless, a single conversation in which Natasha conveyed this information should have sufficed to stop MRS's calls.

18. MRS called Natasha on an almost daily basis, sometimes multiple times a day.

19. On several occasions, Natasha answered MRS's call and hung up only to have MRS call back the next day.

20. On one occasion, Natasha hung up on MRS and MRS called back the same day.

21. MRS's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Natasha.

22. MRS unreasonably relied upon inaccurate information provided to MRS by one (1) or more original creditors for whom MRS was attempting to collect a debt when MRS called Natasha's cellular telephone.

23. MRS's policies and procedures violate the FDCPA.

24. MRS's collection efforts, including but not limited to its telephone calls, caused Natasha emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

25. MRS's collection efforts also intruded upon Natasha's privacy.

26. In addition, each time MRS placed a telephone call to Natasha, MRS occupied Natasha's telephone number such that Natasha was unable to receive other phone calls at that telephone number while MRS was calling her.

27. MRS's telephone calls also forced Natasha to lose time by having to tend to MRS's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

28. Natasha re-alleges and incorporates by reference Paragraphs 5 through 27 above as if fully set forth herein.

29. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

30. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

31. The likely effect of MRS's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Natasha.

32. MRS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Natasha in connection with the collection of the debt.

## COUNT TWO

## Violation of the Fair Debt Collection Practices Act

33. Natasha re-alleges and incorporates by reference Paragraphs 5 through 27 above as if fully set forth herein.

34. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA.  *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

35. MRS's policies and procedures, as described in Paragraphs 21 through 22 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

36. MRS's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

37. Because MRS's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

38. MRS violated 15 U.S.C. § 1692d(5) by causing Natasha's telephone to ring or engaging Natasha in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Natasha.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

39. Natasha re-alleges and incorporates by reference Paragraphs 5 through 27 above as if fully set forth herein.

40. MRS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

## Violation of the Telephone Consumer Protection Act

41. Natasha re-alleges and incorporates by reference Paragraphs 12 through 27 above as if fully set forth herein.

42. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

43. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

44. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the*

*Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

45. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

46. MRS used a telephone dialing system with predictive dialer functionality to place calls to Natasha on her cellular telephone.

47. The TCPA provides, in part:

    (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

    (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

    * * *

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

    47 U.S.C. §§ 227(b)(1)(A)(iii).

48. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

49. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Sterling v. Mercantile*

*Adjustment Bureau, LLC*, 2014 WL 1224604, *3 (W.D.N.Y. Nov. 22, 2013).

50. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72 (2015).

51. Natasha was the "called party" in each telephone call MRS placed to Natasha's cellular telephone.

52. MRS violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Natasha on her cellular telephone without Natasha's prior express consent or after such consent had been revoked.

53. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

54. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

55. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

56. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

57. MRS voluntarily placed telephone calls to Natasha's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

58. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

59. MRS failed to adequately place intermittent live verification calls to Natasha's cellular telephone number to ensure that Natasha had provided her express consent to MRS to call those telephone numbers.

60. MRS's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

61. Natasha demands a trial by jury.

## PRAYER FOR RELIEF

62. Natasha prays for the following relief:

    a. Judgment against MRS for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining MRS from placing further telephone calls to Natasha's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c. Judgment against MRS for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call MRS made in violation of the TCPA.

d. For such other legal and/or equitable relief as the Court deems appropriate.

                          RESPECTFULLY SUBMITTED,

Date: January 3, 2017         By:   /s/ Charles M. Clapp

*Of Counsel*
Charles M. Clapp, Esq.
GA Bar No. 101089
Attorney for Plaintiff, Natasha Copeland
HYSLIP & TAYLOR, LLC LPA
5 Concourse Parkway NE
Suite 3000
Atlanta, GA 30328
Phone: 404-585-0040
Fax: 404-393-8893
Email: charles@lawcmc.com